SIXTH DIVISION
November 21, 2007

No. 1-06-1453

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| GABRIEL IRIZARRY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | County Department, |
| v. | ) | Law Division. |
| | ) | |
| ILLINOIS CENTRAL RAILROAD | ) | No. 05 l 4216 |
| COMPANY d/b/a Canadian | ) | |
| National Railway, | ) | Honorable |
| | ) | Abishi C. Cunningham, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff, Gabriel Irizarry, filed a two-count complaint against his former employer, Illinois Central Railroad Company (defendant). Count I sought relief under the Federal Employer's Liability Act (FELA) (45 U.S.C. §51 *et seq.* (2000)) for injuries plaintiff sustained while employed by defendant. Count II was a common-law retaliatory discharge claim. The circuit court granted defendant's motion to dismiss count II of plaintiff's complaint pursuant to section 2-615(a) of the Code of Civil Procedure (735 ILCS 5/2-615(a) (West 2002)). Plaintiff now appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

On April 15, 2005, plaintiff filed a two-count complaint stating a negligence claim under the FELA and a state claim for retaliatory discharge. The factual allegations common to both counts are summarized as follows. On February 28, 2005, plaintiff was employed as a carman at one of defendant's facilities. Because plaintiff was working in interstate commerce, both he and defendant were subject to the provisions of the FELA. On February 28, 2005, as part of his "regular duties," plaintiff was adjusting a piston underneath a train car when a wrench fell and injured his tooth. Plaintiff filed a "personal injury report" pursuant to defendant's rules and regulations and in order to protect any causes of action or other relief that he may have under the FELA. As a result, defendant's risk manager, Charles Krane, spoke to plaintiff and "threatened" to fire him. Soon thereafter, plaintiff was actually terminated. Plaintiff alleges that he was terminated for filing the personal injury report and for potentially pursuing his rights under the FELA.[1]

On June 10, 2005, defendant filed a motion to dismiss count II pursuant to section 2-615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(a) (West 2002)), contending that a railroad employee covered by the FELA for his work-related injuries could not bring an action for retaliatory discharge. On November 1, 2005, the circuit court dismissed plaintiff's retaliatory discharge claim with prejudice. In doing so, the court relied upon this court's recent

---

[1] On June 28, 2005, plaintiff filed his first amended complaint correcting only the name of the corporate defendant. The allegations contained in counts I and II of his complaint remained the same.

No. 1-06-1453

decision in <u>Sutherland v. Norfolk Southern Ry. Co.</u>, 356 Ill. App. 3d 620 (2005), in which we held that a railroad employee subject to the FELA could not assert a state law claim for retaliatory discharge. Plaintiff's subsequent motion for reconsideration was denied on April 24, 2005. He now appeals.

## II. ANALYSIS

Plaintiff contends that the trial court erred in granting defendant's motion to dismiss his retaliatory discharge claim based on our holding in <u>Sutherland</u>. A motion to dismiss under section 2-615(a) of the Code attacks the legal sufficiency of a plaintiff's complaint by alleging defects appearing on its face. <u>Illinois Graphics Co. v. Nickum</u>, 159 Ill. 2d 469, 484 (1994). Such a motion should be granted if the complaint does not allege sufficient facts to state a cause of action. <u>Bianchi v Savino Del Bene International Freight Forwarders, Inc.</u>, 329 Ill. App. 3d 908, 918 (2002). Our review on appeal is generally *de novo*. <u>Unterschuetz v. City of Chicago</u>, 346 Ill. App. 3d 65, 68 (2004).

The retaliatory discharge tort is an exception to the general rule of at-will employment under which an employer may fire an employee for any reason or no reason at all. <u>Jacobson v. Knepper & Moga, P.C.</u>, 185 Ill. 2d 372 (1998). To establish a claim for retaliatory discharge, a plaintiff must show (1) that he has been discharged in retaliation for his activities; and (2) that the discharge violates a clear mandate of public policy. <u>Zimmerman v. Buchheit of Sparta, Inc.</u>, 164 Ill. 2d 29, 35, 645 N.E.2d 877, 881 (1994).

Plaintiff's primary assertion is that we should reconsider our holding in <u>Sutherland</u> and permit him to proceed with a retaliatory discharge cause of action premised on his alleged

3

No. 1-06-1453

termination for pursuing his rights under the FELA. Plaintiff specifically contends that we erred in deciding Sutherland because we based our decision on the presumption that plaintiff had a remedy for retaliatory discharge under the Railway Labor Act (RLA) (45 U.S.C. § 51 *et seq.* (2000)), when, as a result of the United State's Supreme Court's decision in Hawaiian Airlines Inc., v. Norris, 512 U.S. 246, 129 L.Ed.2d 203, 114 S.Ct. 2239 (1994), no such remedy actually exists. In support of this contention, plaintiff cites to four awards from the National Railroad Adjustment Board (NRAB) (see NRAB First Division Award No. 24847 (1997), and Nos. 24909, 24910, 24912 (1998)), in which the Board found, based on Hawaiian Airlines, that it had no authority to consider a state tort claim for retaliatory discharge because such a state tort claim was not preempted by the RLA. We disagree.

We acknowledge that in refusing to expand the scope of the protection offered by Illinois law of retaliatory discharge in Sutherland, we found that absent a state tort claim, plaintiff was not without a remedy for his alleged retaliatory discharge, and we referred him to the RLA's grievance and arbitration procedures. See Sutherland, 356 Ill. App. 3d at 629. We, however, note that, as is apparent from its face, our decision in Sutherland was by no means dictated by this consideration. Rather, as shall be more fully demonstrated below, our decision was guided by our analysis of the history and development of the retaliatory discharge doctrine in the opinions of our supreme court since its seminal decision in Kelsay v. Motorola, Inc., 74 Ill. 2d 172 (1978). Moreover, while we recognize the award board's apparent refusal to grant punitive damages based on a claim of retaliatory discharge, contrary to plaintiff's assertion, the award board did not reject its power and willingness to consider other remedies, including lost wages, back pay and/or

4

No. 1-06-1453

reinstatement, if otherwise appropriate. See NRAB First Division Award No. 24847 (1997), and Nos. 24909, 24910, 24912 (1998).

With all this in mind, we turn to our reconsideration of Sutherland. The question that remains then is whether our supreme court, under its present posture, would extend the tort of retaliatory discharge to include railroad employees discharged for filing an FELA claim. In Sutherland, we fully considered the development and evolution of the tort of retaliatory discharge as formulated by our supreme court in Kelsay, 74 Ill. 2d 172, Palmateer v. International Harvester Co., 85 Ill. 2d 124 (1981), Midgett v. Sackett-Chicago, Inc., 105 Ill. 2d 143 (1984), Barr v. Kelso-Burnett Co., 106 Ill. 2d 520 (1985), Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526 (1988), Hartlein v. Illinois Power Co., 151 Ill. 2d 142 (1992), Zimmerman v. Buchheit of Sparta, Inc., 164 Ill. 2d 29 (1994), Fisher v. Lexington Health Care, Inc., 188 Ill. 2d 455 (1999) and Metzger v. DaRosa, 209 Ill. 2d 30 (2004). We found that the current policy of our supreme court is to restrict and narrow rather than expand the range of the retaliatory discharge cause of action. See Fellhauer v. City of Geneva, 142 Ill. 2d 495, 505 (1991) (the tort of retaliatory discharge is "a limited and narrow cause of action"); Metzger, 209 Ill. 2d at 44 (the supreme court emphasized that it has "consistently sought to restrict the common law tort of retaliatory discharge"); Barr, 106 Ill. 2d at 525, ("[T]his court has not, by its Palmateer and Kelsay decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort").

This restrictive policy was repeatedly demonstrated in rejecting the expansion of the tort to include a discharge in retaliation for the exercise of the right to free speech (see Barr, 106 Ill.

5

No. 1-06-1453

2d at 525); a discharge in retaliation for filing a health insurance claim (see Price v. Carmack Datsun, Inc., 109 Ill. 2d 65 (1985)); an allegedly wrongful discharge based on age (Mein v. Masonite Corp., 109 Ill. 2d 1 (1985); a "constructive discharge" (see Hartlein, 151 Ill. 2d at 161); and a retaliatory demotion or suspension, short of actual termination (see Zimmerman, 164 Ill. 2d at 37-38) .

This policy of restricting the tort of retaliatory discharge was further implemented by appellate court decisions. See Geary v. Telular Corp., 341 Ill. App. 3d 694, 701-02 (2003) (in refusing to extend the tort to a plaintiff allegedly terminated for asserting rights under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 et seq. (West 2000)), the court stated that "Illinois courts have on several occasions refused to expand the tort of retaliatory discharge to claims under that Act, finding that a discharge allegedly in retaliation for complaints about unpaid wages under this Act does not violate a clearly mandated public policy"); Scheller v. Health Care Service Corp., 138 Ill. App. 3d 219, 224, 485 N.E.2d 26, 29-30 (1985), quoting Beye v. Bureau of National Affairs, 59 Md. App. 642, 653, 477 A.2d 1197, 1203 (1984) (refusing to extend the tort of retaliatory discharge to situations where an "'employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign'"); New Horizons Electronics Marketing, Inc. v. Clarion Corp. of America, 203 Ill. App. 3d 332, 336, 561 N.E.2d 283, 285 (1990) (holding that an independent contractor who alleged that it was terminated from its position as sales representative for defendant, for its refusal to participate in illegal bribes and kickbacks could not maintain an action for retaliatory discharge because the court has not "expanded the

6

tort outside of the *employment* setting," (emphasis in original) and because plaintiff was not an employee but an independent contractor); Stutzman v. Board of Education of the City of Chicago, 171 Ill. App. 3d 670, 675, 525 N.E.2d 903, 907 (1988) (concluding that a retaliatory discharge cause of action does not encompass a 24-hour retaliatory suspension of a school principal who was allegedly disciplined for his failure to cooperate with the school's legal department); Hindo v. University of Health Sciences/Chicago Medical School, 237 Ill. App. 3d 453, 460, 604 N.E.2d 463, 468 (1992) (expressly rejecting retaliatory demotion as a cause of action where medical school professor alleged that he was demoted in retaliation for reporting fraudulent activities of school employees at affiliated hospital); Veit v. Village of Round Lake, 167 Ill. App. 3d 350, 351-52, 521 N.E.2d 145, 146-47 (1988) (holding that Illinois does not recognize a claim of retaliatory harassment).

In Sutherland, we concluded that as the law stands today, the tort of retaliatory discharge is available only under two situations: (1) where the discharge stems from exercising rights pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq*. (West 2002)) or (2) where the discharge is for "whistleblowing" activities, reporting illegal or improper conduct. See Jacobson v. Knepper & Moga, P.C., 185 Ill. 2d 372 (1998); see also Sutherland, 356 Ill. App. 33d at 626. "'Other than these two circumstances, however, Illinois courts consistently have refused to expand the tort to encompass a private and individual grievance.'" Sutherland, 356 Ill. App. 3d at 626, quoting Geary, 341 Ill. App. 3d at 701; see also Buechele v. St Mary's Hospital Decatur, 156 Ill. App. 3d 637, 642 (1987) (refusing to extend tort of retaliatory discharge claim to employee allegedly fired for filing libel and slander suit against her employer, because the

7

action involved only individual rights and not any clearly mandated public policy); Eisenbach v. Esformes, 221 Ill. App. 3d 440 (1991) (refusing to extend tort of retaliatory discharge to plaintiff, a limited partner, who alleged that he was terminated in retaliation for suing the general partner for breach of fiduciary duty because the action involved no clearly mandated public policy); Gould v. Campbell's Ambulance Service, Inc., 111 Ill. 2d 54 (1986) (court rejected plaintiff's allegation that she was discharged in retaliation for filing a complaint against her employer because the city ordinance setting ambulance-worker requirements did no establish a state public policy); McCluskey v. Clark Oil & Refining Corp., 147 Ill. App. 3d 822 (1986) (court rejected retaliatory discharge claim on basis that plaintiff was discharged solely because she married a coworker finding that the law on marriage did not provide a basis for a public policy exception to the at-will rule); Zaniecki v. P.A. Bergner & Co., 143 Ill. App. 3d 668 (1986) (court held plaintiff's discharge involved a purely private dispute rather than public policy, where plaintiff alleged that he was terminated after reporting the store's manager was taking scrap wood from shipping containers for personal use).

Moreover, we note that the federal district court in Sabich v. National R.R. Passenger Corp., No. 90 C 3344 (N. D. Ill. Nov. 20, 1991 ) (unreported case), rejected the argument that filing an FELA claim implicates a clearly mandated Illinois public policy and predicted that the Illinois Supreme Court would not recognize such a claim. In doing so, the district court relied on Fellhauer v. City of Geneva, 142 Ill. 2d 495, 505 (1991), a case in which our supreme court held that a former director of a city electrical department, who alleged that the mayor discharged him for advising vendors that their continued business relationship with the city did not depend on

donations to the mayor's campaign fund and for inquiring with the city attorney regarding the propriety of the mayor's solicitation, failed to state a cause of action for retaliatory discharge. The district court relied on Fellhauer as a reconfirmation (1) of the narrow boundaries that have been placed around retaliatory discharge claims by the Illinois Supreme Court and (2) of that court's reluctance to stretch those boundaries. The district court judge, Judge Shadur, continued:

> "When this court is called upon, as it is here, to predict the Illinois Supreme Court's most likely treatment of a claim such as this, it simply will not presume that the State's highest court would honor such a claim as serving 'a clearly mandated [*state*] public policy' in the face of our Court of Appeals' express refusal to permit a private cause of action based on that same federal statute, as serving 'a clearly mandated [*federal*] public policy.' Nothing in Fellhauer or in any of the Illinois Supreme Court cases that preceded it justifies such a ruling." (Emphasis omitted and added.) Sabich, No. 90 C 3344, slip. op. at 1, (N. D. Ill. Nov. 20, 1991) (unreported case).

Likewise, applying the same reasons to the case at bar, and in light of our supreme court's expressed reluctance to expand the tort of retaliatory discharge, we refuse to extend the tort to employees discharged for filing FELA claims.

Plaintiff nevertheless contends that in Koehler our supreme court would have extended the tort of retaliatory discharge to include a retaliatory discharge of a railroad employee terminated for filing a personal injury report under the FELA, had it not been mistaken about the preemption obstacle. We note that this exact argument was raised and rejected by this court in Sutherland.

9

In Koehler, the plaintiff alleged that he was discharged by the defendant railroad in retaliation for filing an FELA claim (Koehler v. Illinois Central Gulf R.R. Co., 109 Ill. 2d 473, 474 (1985)), and the appellate court dismissed the complaint on the grounds that the tort of retaliatory discharge was not available to an employee covered by a collective-bargaining agreement (Koehler v. Illinois Central Gulf R.R. Co., 123 Ill. App. 3d 1038 (1984)). On appeal, our supreme court initially entered a supervisory order, reversing the dismissal and remanding the cause to the circuit court to proceed in conformity with Midgett, decided in the interim, which extended the action for retaliatory discharge to unionized employees. Koehler, 109 Ill. 2d at 475. However, upon a motion for reconsideration, the supreme court affirmed the dismissal on the sole ground that the plaintiff's action for retaliatory discharge was preempted by the RLA. Koehler, 109 Ill. 2d at 475. Subsequently, in Hawaiian Airlines, the United States Supreme Court removed the preemption obstacle to state retaliatory discharge claims and held that the dispute resolution provisions of the RLA do not preempt state law claims for retaliatory discharge that do not implicate collective-bargaining agreements. In rejecting plaintiff's contention that post-Hawaiian Airlines, our supreme court would have extended the tort of retaliatory discharge to cover employees terminated for filing claims under the FELA in Sutherland, we stated:

> "This argument is without merit. Aside from the fact that the initial supervisory order in Koehler was superseded by a published opinion and, therefore, has no precedential force, our supreme court's subsequent decisions foreclosed the viability of such an action. As noted, after Kelsay and Palmateer, the supreme court has viewed new implied actions for retaliatory discharge

exceedingly less favorably. See Fisher, 188 Ill. 2d at 468 ("we must *** hesitate to imply [retaliatory discharge] actions under a statute without explicit legislative authority"). As discussed in Geary, this court, too, has declined to expand a private right of action to cover retaliatory discharges which did not occur in the Workers' Compensation Act or whistleblowing settings. See Geary, 341 Ill. App. 3d at 701-02; see also Mitchell v. Deal, 241 Ill. App. 3d 331, 609 N.E.2d 378 (1993) (rejecting a claim for retaliatory discharge by a farm laborer not covered by the Workers' Compensation Act); Eisenbach, 221 Ill. App. 3d 440, 582 N.E.2d 196 (rejecting a claim for retaliatory discharge by a plaintiff who was fired for bringing a lawsuit against an affiliate of his employer)." Sutherland, 356 Ill. App. 3d at 628-29.

As we find that plaintiff has not presented any novel argument, we continue to adhere to the position espoused in Sutherland.

Plaintiff next contends that by denying him the right to assert a retaliatory discharge claim in Sutherland, we violated his constitutional right to equal protection. Plaintiff specifically contends that there is no rational basis to distinguish between railroad employees and nonrailroad employees and to provide only nonrailroad employees with the protection of the Illinois state retaliatory discharge cause of action. In support of that contention, plaintiff cites to Laffoon v. Bell & Zeller Coal Co., 65 Ill. 2d 437 (1976). In that case, plaintiffs challenged the constitutionality of section 5(a) of the Illinois Workers' Compensation Act, which appeared to confer immunity to general contractors from actions for damages by injured employees of a

11

subcontractor that carried no compensation insurance. Laffoon, 65 Ill. 2d at 445. In that case, plaintiff contended that the Workers' Compensation Act would allow an employee of a subcontractor that carries worker's compensation insurance to receive compensation benefits from his employer, as well as sue and recover damages from the general contractor that is tortiously liable for his injuries, while it would preclude an employee of a subcontractor that carries no compensation insurance from maintaining a suit for damages against the general contractor even though he is liable for the employee's injuries. In that case, the court found that this construction of the Workers' Compensation Act would be an arbitrary classification that would violate the injured employee's right to due process and equal protection of the laws. Laffoon, 65 Ill. 2d at 445-47. For the reasons that follow, we find that plaintiff's assertion is without merit and that case inapposite.

We first note that the distinction between employees in railroad industries and nonrailroad industries does not implicate a suspect class and, therefore, does not require strict scrutiny of the classifications by this court. See People v. Vernon, 276 Ill. App. 3d 386, 389 (1995) (when deciding whether state action discriminates against a suspect class in violation of equal protection, the strict scrutiny test is applied, and the action is upheld only if it is narrowly tailored to serve a compelling government interest). Instead, all that is required is that the classification have a rational relationship to a legitimate government interest. See Vernon, 276 Ill. App. 3d at 389 ("If the challenged [state action] does not affect a fundamental right or discriminate against a suspect class, we apply the more lenient 'rational basis' test. This test upholds the [action] if it bears a rational relationship to a legitimate statutory objective"); Laffoon, 65 Ill. 2d at 445-47 ("for these

12

classifications to be deemed constitutional,*** it must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a rational relation to the evil to be remedied and the purpose to be attained by the statute, otherwise the classification will be deemed arbitrary and in violation of constitutional guarantees of due process and equal protection of the laws [Citation.]").

We find that in the present case, there is a rational relationship for distinguishing between federal railroad employees and Illinois nonrailroad employee. First, the United States Congress saw fit to exempt FELA employees from state worker's compensation statutes. Second, the Illinois Supreme Court's unwillingness to expand the tort of retaliatory discharge beyond the Illinois Workers' Compensation Act and the whislteblower context is rationally related to the legitimate government interest in preserving at-will employment (see Buckner v. Atlantic Plant Maintenance Inc., 182 Ill. 2d 12, 19 (1998) (Illinois law has long upheld the "at-will" employment doctrine under which an employer may terminate an employee at any time with or without cause)), and in not creating new causes of action without legislative authorization (see Fisher v. Lexington Health Care, Inc., 188 Ill. 2d 455, 460-61, 468, 722 N.E.2d 1115, 1118, 1121 (1999) (supreme court stated that it must hesitate to imply private retaliatory discharge actions under a statute without explicit legislative authority, and refused to imply a private right of action for nursing home employees from section 3-608 of the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)), which prohibited the "transfer, discharge, evict[ion], harasss[ment], dismiss[al] or retaliat[ion]" against, among others, nursing home employees who reported abuse and neglect of

13

nursing home residents, because nursing home employees were not members of the class that the Nursing Home Care Act was enacted to protect, and their injuries were not the type the statute was designed to prevent); Metzger v. DaRosa, 209 Ill. 2d 30, 35, 805 N.E.2d 1165, 1168 (2004), quoting 20 ILCS 415/19c.1(l), (ii) (West 2002) (court declined to imply a private cause of action for whistleblowers from section 19c.1 of the Personnel Code (20 ILCS 415/19c.1 (West 2002)), which prohibited retaliation against state employees for reporting violations of "'any law, rule, or regulation'" or "'mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to pubic health or safety'" because the statute was primarily intended to protect the public by providing efficient government administration, and because no civil remedy was provided by the statute for those employees injured by its violations)).

Plaintiff nevertheless contends that there is no difference in the purpose underlying the public policies of the Illinois Workers' Compensation Act and the FELA and that, therefore, there is no rational basis for distinguishing between employees covered under these statutes. In support of this contention, plaintiff cites to Hysten v. Burlington Northern Santa Fe Ry, Co., 277 Kan. 551, 556-57, 108 P.3d 437, 441 (2004), a Kansas Supreme Court case that recognized a state law claim for retaliatory discharge filed by a railroad worker and found that "Kansas has a 'thoroughly established' public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them for exercising their rights." Hysten, 277 Kan. at 561, 108 P.3d at 444. We already noted in Sutherland, that the public policies driving the FELA and the Workers' Compensation Act are not the same. The underlying purpose of the Illinois Workers' Compensation Act is to provide financial protection to employees whose

14

earning power has been temporarily diminished or terminated as a result of injuries arising out of and in the course of employment. Laffoon, 65 Ill. 2d at 444. The FELA, on the other hand was enacted for the purpose of providing a federal remedy for railroad workers who suffer personal injuries as a result of the *negligence* of their employer or their fellow employees. "The FELA is not, however, a workers' compensation statute. The basis for liability under the statute is the employer's negligence, not merely the fact that an employee is injured on the job." Wilson v. Norfolk & Western Ry. Co., 187 Ill. 2d 369, 373 (1999).

Moreover, as already noted in Sutherland, the Illinois Workers' Compensation Act contains specific language that protects an employee from retaliatory discharge by his employer for filing a workers' compensation claim. Section 4(h) of that Act states:

> "It shall be unlawful for any employer *** to discharge or to threaten to discharge, or to refuse to rehire or recall *** an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2002).

The provisions of the FELA, on the other hand, do not in themselves prohibit discharge of an employee for invoking their protections and benefits. See Sutherland, 356 Ill. App. 3d at 623. Nor are we aware of any declaration of public policy in the FELA condemning or prohibiting railroad employers from retaliating against FELA claimants. 45 U.S.C. §51 *et seq*. (2000). See Barr, 106 Ill. 2d at 527 ("where a plaintiff cites a statute as the basis for his retaliatory discharge claim, the test for determining if the plaintiff has a cause of action is "whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge. [Citation.] The

15

application of this test necessarily involves determining what the public policy is behind the enactment or adoption of a particular provision. The public policy underlying a statutory or constitutional provision is found by examining the history, purpose, language and effect of the provision").

Defendant notes and we agree that the only provision in the FELA that has been interpreted as prohibiting alleged retaliatory employment action is section 10, which refers only to whistleblowing activity and is therefore not relevant to extending the tort to encompass situations outside of the worker's compensation setting. Section 10 of the FELA reads:

> "[W]hoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1000, or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense ***." 45 U.S.C. §60 (2000).

Several federal decisions have interpreted this section and found that, by its express terms, that section "applies only to railroad employees discharged for *furnishing information to others*; it does not encompass employees who are discharged or disciplined because *they themselves initiate FELA actions*." (Emphasis in original.) Lewy v. Southern Pacific Transportation Co., 799 F.2d 1281, 1293 (9th Cir. 1986); see also Shrader v. CSX Transportation Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[F]our circuits–every one that had considered the applicability of section 10 to

16

circumstances similar to those presented by [an FELA claimant alleging that he was discharged in violation of section 10 for reporting his own injury]–had concluded that section 10 did not apply"); Bielicke v. Terminal R.R. Ass'n, 30 F.3d 877, 878 (7th Cir. 1994) (court held that employee's filing of his own FELA claim with his employer does not constitute the voluntary furnishing of information to a person in interest about an employees injury within the meaning of section 10 of the FELA); Mayon v. Southern Pacific Transportation Co., 805 F.2d 1250, 1252-53 (5th Cir. 1986) ("[O]ne who helps a co-worker file an FELA claim may have a cause of action under § 60 for retaliatory discharge. One who is discharged for filing his own FELA claim, however, does not"); Landfried v. Terminal R.R. Ass'n of St. Louis, 721 F.2d 254, 256 (8th Cir. 1983) (same).

We further reject plaintiff's contention that by our decision in Sutherland, he was denied his constitutional right to due process. We first note that plaintiff merely cites to Logan v. Zimmerman Brush Co., 455 U.S. 422, 71 L.Ed. 2d 265, 102 S.Ct. 1148 (1982) for this proposition without offering any argument. As such, he has waived this issue for purposes of appeal. See 188 Ill. 2d R. 341(e)(7) ("A point raised, but not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7)").

However, even if we were to consider that defendant did not waive this argument, we would conclude that Logan is inapposite and plaintiff was not denied his right to due process. In Logan, the United States Supreme Court held that a discharged employee's statutorily created right to use the Illinois Fair Employment Practices Act's (Fair Practices Act) (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*) adjudicatory procedures, following his discharge, and following his filing

17

a timely charge of unlawful termination with the Illinois Fair Employment Practices Commission (Commission), was a species of property, protected by the Fourteenth Amendment's due process clause, and that the state could not deprive Logan of that right without due process of law. Logan, 455 U.S. at 427-28, 71 L.Ed.2d at 272-73, 102 S.Ct. at 1153-54.  Unlike in Logan, where there was no question as to whether the Fair Practices Act created a cause of action for unlawful termination based on discrimination, in the present case, as already discussed above, there is neither a statutorily created nor a common-law cause of action for retaliatory discharge under the FELA.

In Logan, plaintiff filed a cause of action with the Commission for unlawful termination based on a physical handicap.[2]  Logan, 455 U.S. at 426, 71 L.Ed.2d at 271, 102 S.Ct. at 1152. This cause was brought under the Illinois Fair Practices Act, a statute, which, as stated in Logan, "barred employment discrimination on the basis of 'physical handicap unrelated to ability,'" and "established a comprehensive scheme for adjudicating allegations of discrimination," which required a complainant to "bring a charge of unlawful conduct before the [Commission] within 180 days of the occurrence of the allegedly discriminatory act." Logan, 455 U.S. at 424, 71 L.Ed. 2d at 270, 102 S.Ct. at 1151-52, quoting Ill. Rev. Stat. 1979, ch. 48, par. 853(a).  The filing of the unlawful discharge action triggered the Commission's statutory obligation to convene a fact-finding conference within 120 days.  Logan, 455 U.S. at 426, 71 L.Ed. 2d at 271, 102 S.

---

[2]Plaintiff alleged he was discriminated against and discharged because of his handicap, namely that his short left leg made it impossible for him to perform his duties as a shipping clerk. Logan, 455 U. S. at 426, 71 L.Ed. 2d at 271, 102 S. Ct. at 1152.

Ct. at 1152-53. Apparently through inadvertence, the Commission's representatives scheduled a conference five days after expiration of the statutory period. Logan, 455 U.S. at 426, 71 L.Ed. 2d at 269, 102 S.Ct. at 1152. The employer filed a motion to dismiss due to untimeliness and the Illinois Supreme Court dismissed the discrimination charge, stating that plaintiff had no liberty or property interest in the cause of action as it was purely a grant from the legislature, which could provide for its extinguishment. Zimmerman Brush Co. v. Fair Employment Practices Comm'n, 82 Ill. 2d 99, 108-09 (1980).

The United States Supreme Court reversed, holding that the statutorily created cause of action was a property interest and that in the present case the state had negligently destroyed it, thereby violating Logan's due process rights. Responding to the employer's argument that a state tort action against the agency provided that employee all the process due to her, the Supreme Court emphasized that postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to "established state procedure," rather than random and unauthorized action. In Logan, the Court held that the "established state procedure" was the Illinois statute itself, which deprived a claimant of an opportunity to pursue his employment discrimination claim if the Commission failed to convene a fact-finding conference within 120 days. The Court made clear that it was not the Commission's negligence but, rather, the state system itself that destroyed Logan's property interest, regardless of whether the Commission failed to timely convene through "negligence, maliciousness or otherwise." Logan, 455 U.S. at 436, 71 L.Ed. 2d at __, 102 S.Ct. at 1158.

In the present case, unlike the plaintiff in Logan who was deprived of his legislatively

created right to redress discrimination under the Fair Practices Act, plaintiff, here, is not being deprived of an established remedy which gives rise to a property interest but, rather, is claiming a tort remedy for retaliatory discharge that we have held not to exist. As already noted, this remedy has not been recognized as a private right of action under the FELA. Where a right to such a cause of action has not been established, there can be no basis upon which to claim a constitutional deprivation of a vested property right.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

FITZGERALD SMITH, P.J., and O'MALLEY, J., concur.