JAMES E. McKAY, Plaintiff-Appellant, v. PINKERTON'S, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—92—0275

Opinion filed December 3, 1992.—Rehearing denied February 5, 1993.

James E. McKay, of Sterling, appellant *pro se*.

Robert J. Noe, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee Pinkerton's, Inc.

Jonathon I. Fieldman, of Sidley & Austin, of Chicago, for appellee Iowa-Illinois Gas and Electric Company.

Dennis R. Fox, of Califf & Harper, P.C., of Moline, for appellee Commonwealth Edison Company.

JUSTICE STOUDER delivered the opinion of the court:

The *pro se* plaintiff, James E. McKay, appeals from the dismissal of his claim against the defendants, Pinkerton's, Inc., Commonwealth Edison Company (Edison), and Iowa-Illinois Gas and Electric Company (Iowa-Illinois). We affirm.

The record shows that the defendant was employed by Pinkerton's as a security guard for a nuclear power plant owned by the other two defendants in this case. The plaintiff was an at-will employee who signed a contract with Pinkerton's wherein he agreed that he would never reveal any information acquired during his employment to anyone except Pinkerton's or to individuals he was required by law to inform.

The plaintiff admits that he revealed information learned in the course of his employment to Edison. Thereafter, on April 21, 1977, Pinkerton's fired the plaintiff for violating the terms of his employment contract. Pinkerton's stated that the reason for the dismissal was that the plaintiff had reported alleged safety and security violations at the Edison Nuclear Plant to third parties.

In the years since his termination, the plaintiff has repeatedly attempted to state a cause of action for wrongful discharge. With the help of five different attorneys, he has filed four complaints alleging a total of 21 counts. Finally, on March 13, 1992, after careful consideration, the trial court granted the defendants' motions to dismiss the complaints. The court also denied the plaintiff's motion for summary judgment against Pinkerton's. The court, while expressing sympathy for the plaintiff, nonetheless found that the plaintiff had failed to sufficiently allege a cause of action against the defendants.

The record also shows that the underlying basis for all of the counts filed by the plaintiff was that his discharge was wrongful since he only disclosed the information to protect the lives and property of citizens from a nuclear disaster.

On appeal, the plaintiff first argues that the court erred in dismissing his complaints since he properly alleged a cause of action. Specifically, he contends that he alleged the tort of "retaliatory discharge," and that his discharge violated a clearly mandated public policy.

A motion for summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file show that

there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) In ruling on the motion, the court should construe the pleadings, affidavits, and exhibits most strictly against the moving party and most liberally in favor of the opponent. *Staton v. Amax Coal Co.* (1984), 122 Ill. App. 3d 631, 461 N.E.2d 612.

■ An employer may discharge an employee at will for any reason or for no reason at all, except when the discharge violates a clearly mandated public policy. In order to state a valid cause of action for retaliatory discharge, the plaintiff must allege that he was discharged in retaliation for his activities and that his discharge violated a clear mandate of public policy. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354.) While there is no precise definition of what constitutes clearly mandated public policy, generally it concerns what is right and just, and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

In the case at hand, the plaintiff alleged in his complaint that the termination of his employment contravened a public policy of protecting lives and property of citizens from hazards associated with radioactive material. Specifically, he argued that his termination violated section 5851 of the Atomic Energy Act (42 U.S.C. §5851 (1978)). This section protects employees who report nuclear hazards from being fired for reporting such violations.

■ Unfortunately for the plaintiff, this statute is not applicable to his case because it was not enacted until 18 months after his employment was terminated. As such, this statute cannot be used to show that his employer's actions contravened a clearly mandated public policy. See *Gould v. Campbell's Ambulance Service, Inc.* (1986), 111 Ill. 2d 54, 488 N.E.2d 993.

In addition, our research has failed to reveal any statute in existence at the time of the plaintiff's termination which set forth a clearly mandated public policy regarding the reporting of nuclear safety violations. While such reporting may be in the best interest of the public, we must be mindful of the fact that the plaintiff signed a contract with Pinkerton's which stated he would not reveal any information acquired in the course of his employment to anyone but Pinkerton's or *as required by law.*

Since we are unaware of any law in effect at the time of his employment which required the plaintiff to report safety violations to anyone, we find that the plaintiff's complaint failed to state a cause of

action for retaliatory discharge. As such, we hold that the trial court properly allowed the defendants' motions to dismiss those counts.

■■ Based on this finding, we also uphold the trial court's dismissal of the plaintiff's counts which alleged that Edison and Iowa-Illinois were vicariously liable to him under a master-servant or principal-agent theory. As stated, the plaintiff failed to properly allege any underlying wrongful discharge by Pinkerton's. As such, even if such relationships existed, these defendants would not be liable since the plaintiff failed to state a cause of action against Pinkerton's.

We now turn to the plaintiff's contention that Edison's conduct amounted to tortious interference with his contract with Pinkerton's. In count VI of his complaint, the plaintiff alleged that Edison advised Pinkerton's that it should terminate the plaintiff's employment for reporting safety violations to individuals other than Pinkerton's.

The elements necessary to establish a *prima facie* cause of action for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) the subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *Lusher v. Becker Brothers, Inc.* (1987), 155 Ill. App. 3d 866, 509 N.E.2d 444.

■■ We have already determined that the plaintiff was an at-will employee. Consequently, he had no enforceable contractual right against his termination. Edison therefore could not have tortiously interfered with his contract by urging his termination. Accordingly, we find that the court properly dismissed count VI of the complaint.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

GORMAN and HAASE, JJ., concur.